# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DENISE PICKFORD and JOHN TURNAGE,<br><br>Plaintiffs,<br><br>v.<br><br>KEMP & ASSOCIATES, INC.,<br><br>Defendant. | Case No. 19-CV-997 (NEB/ECW)<br><br>ORDER ON MOTION TO DISMISS |

After the death of the Plaintiffs' father, the Plaintiffs Denise Pickford and John Turnage executed a contract with Defendant Kemp & Associates, Inc. ("Kemp"), under which Kemp agreed to identify and acquire unclaimed probate assets for the Plaintiffs in exchange for 25 percent of the recovery. The Plaintiffs now argue that the agreement violates Minnesota law under the doctrines of champerty and maintenance. The Plaintiffs' Amended Complaint alleges several common-law claims and a claim under the Minnesota Prevention of Consumer Fraud Act ("MCFA"). The case rests in this Court on removal diversity jurisdiction. If the Plaintiffs cannot state a claim under the MCFA, they cannot meet the amount-in-controversy requirement, and jurisdiction falls. The Court finds that the Plaintiffs have failed to state a claim under the MCFA. As a result, the Court lacks subject-matter jurisdiction over the remaining claims, declines to exercise supplemental jurisdiction over these claims, and remands the case to state court.

## BACKGROUND

Plaintiffs Denise Pickford and John Turnage are siblings residing in Minnesota. [ECF No. 9 ("Am. Compl." ¶¶ 1–3.)] Kemp is a Utah corporation that notifies and helps beneficiaries acquire unclaimed probate assets for a contingency fee. (*Id.* ¶¶ 4, 10.) In April 2016, Kemp informed the Plaintiffs that they may be beneficiaries of their late father's estate. (*Id.* ¶¶ 11, 15.) The parties then executed an agreement, which they call "the Assignments," under which Kemp agreed to pay all expenses to prove the Plaintiffs' claim, in exchange for 25 percent of the amount acquired from the estate. (*Id.* ¶¶ 24–25.) The estate was probated in Lake County, Illinois. (*Id.* ¶ 32.) Kemp retained a law firm to represent the Plaintiffs. (*Id.* ¶ 31.) The law firm obtained a distribution of $249,606.61 for the Plaintiffs and automatically distributed $62,401.65 (25 percent) of that sum to Kemp. (*Id.* ¶¶ 36–37.)

The Plaintiffs, residents of Minnesota, filed this suit in state court, alleging that their agreement with Kemp violates Minnesota's laws against champerty and maintenance. The Amended Complaint alleges claims against Kemp for negligent misrepresentation, unjust enrichment, and violations of the MCFA. Kemp removed the case to federal court [ECF No. 1] and moved to dismiss [ECF No. 4].

# ANALYSIS

## I. Subject-Matter Jurisdiction

This Court must make certain it has subject-matter jurisdiction to review this case. *See* 28 U.S.C. § 1447(c). While the parties do not question subject-matter jurisdiction in their briefing, the Court may—and here will—address the issue sua sponte. *Bueford v. Resolution Tr. Corp.*, 991 F.2d 481, 485 (8th Cir. 1993). Kemp asserts diversity jurisdiction, present where there is complete diversity between the parties and the amount-in-controversy exceeds $75,000. 28 U.S.C. §§ 1332. The removing party must prove the amount-in-controversy by a "preponderance of the evidence." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005).

The parties here are appropriately diverse, but it is not immediately clear to the Court that the Plaintiffs have alleged an amount-in-controversy exceeding $75,000. The Amended Complaint merely asks for "damages in excess of $50,000" and the Plaintiffs provide no reason why they would be entitled to damages beyond the $62,401.65 already transferred to Kemp. Any interest accrued is not included in the amount-in-controversy calculation. 28 U.S.C. § 1332(a). To get them through the $75,000 doorway, the Plaintiffs point out that they have asked for attorneys' fees. (Am. Compl. at 15.) While courts generally do not count attorneys' fees toward the amount-in-controversy, "statutory attorneys' fees can be counted towards the jurisdictional amount." *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009). The Plaintiffs bring a claim under the MCFA

3

which allows a plaintiff to request "reasonable attorney's fees." Minn. Stat. § 8.31, Subd. 3a. As a result, the Plaintiffs have sufficiently requested statutorily allowed attorneys' fees, which are included in the calculation towards $75,000. While there is nothing in the Complaint alleging any calculation of attorneys' fees, it is likely the amount-in-controversy will exceed $75,000 with the addition of reasonable attorneys' fees. The Court can therefore conclude that the amount-in-controversy likely exceeds $75,000, and that Kemp has established diversity jurisdiction for the MCFA claim.

## II.     The MCFA Claim.

Because the MCFA claim is the sole claim conferring jurisdiction on the Court, the operative question becomes whether the Plaintiffs have sufficiently alleged a violation of the statute. Kemp argues they have not. At this stage in the litigation, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The MCFA prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any

4

merchandise . . . ." Minn. Stat. § 325F.69, Subd. 1.[1] As with other fraud claims, the Plaintiffs must allege fraudulent activity under the MCFA with particularity. *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183 (Minn. Ct. App. 2012). To satisfy the particularity requirement, the Plaintiffs must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* at 184 (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997)).

The Plaintiffs contend that Kemp violated the MCFA by inducing them to enter into the Assignments when "[o]n information and belief, at all times relevant herein, [Kemp] knew that champerty and maintenance were prohibited in Minnesota." (Am. Compl. ¶ 105.) At no point in the Amended Complaint do the Plaintiffs describe any affirmative misrepresentations made by Kemp, instead stating that Kemp "did not disclose and/or misrepresented the legality of the Assignments for the purpose of inducing Plaintiffs into executing the Assignments." (*Id.* ¶ 107.) By merely alleging that Kemp "misrepresented the legality of the Assignments," the Plaintiffs fail to put forth the "who, what, when, where, and how" necessary in a case for fraud. This statement therefore fails to plead any affirmative misrepresentation with particularity.

This conclusion does not immediately destroy the Plaintiffs' case. They may also bring a claim under the MCFA for fraudulent omission. *Graphic Commc'ns Local 1B Health*

---

[1] "Merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Minn. Stat. § 325F.68, Subd. 2.

5

*& Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 696 (Minn. 2014). To do so, they "must plead and prove not only an omission of material fact, but also special circumstances that trigger a duty to disclose." *Id.* Under Minnesota law, these circumstances have been recognized as meeting this standard:

> (a) One who speaks must say enough to prevent his words from misleading the other party.
> (b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.
> (c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Carufel v. Minnesota Dep't of Public Safety*, No. A18-0486, 2018 WL 6596287, at *10 (citing *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972)).

Plaintiffs have not pled one of these special circumstances; but even if they had, they would still have to plead with particularity that Kemp *intended* to defraud them. *See Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000) (holding that the MCFA requires that the conduct at issue "must have been intended to deceive someone"). The Amended Complaint does not make such an assertion. It does not allege that Kemp intended to deceive them to induce them to enter into the Assignments; it merely states "[o]n information and belief, at all times relevant herein, [Kemp] knew that champerty and maintenance were prohibited in Minnesota." (Am. Compl. ¶ 105.) Even assuming this allegation is true, the Plaintiffs do not allege (1) that Kemp knew the Assignments would

6

be void for champerty and maintenance, or (2) that Kemp intentionally omitted this knowledge to get the Plaintiffs to agree to the Assignments. Without specific allegations of intentional fraud, the Plaintiffs' MCFA claim cannot survive the motion to dismiss.

Nor do the Plaintiffs put forth—and the Court is unaware of—any applicable law explicitly finding that Minnesota's laws against champerty and maintenance apply to Kemp's business model. Instead, the Plaintiffs ask this Court to find as a matter of law that Kemp's business is illegally champertous. Minnesota law is unclear on this issue, though Minnesota courts have voided litigation-funding agreements as champertous. *See Maslowski v. Prospect Funding Partners* LLC, No. A18-1906, 2019 WL 3000747 (Minn. Ct. App. July 8, 2019). Courts outside Minnesota have taken conflicting approaches on probate research firms. *See, e.g.*, *Finders Diversified, Inc. v. Baugh*, No. 83-424, 1984 WL 7841, at *3 (Ohio Ct. App. Apr. 20, 1984) ("Contracts between probate research organizations and possible heirs to an estate by which the heirs agree to pay the research organization a percentage of any amount recovered, and the research organization agrees to pay any and all expenses incidental to claiming and recovering the estate, are champertous and, therefore, unenforceable."); *but see Matter of Estate of Katze-Miller*, 463 N.W.2d 853, 860 (Wis. Ct. App. 1990) (finding a similar arrangement not champertous because at the time of the contract, "[t]here was nothing in dispute or litigation" but there was only "a non-adversarial probate proceeding pending" (citation omitted)). Without clear law voiding this agreement and under the language of this Amended Complaint, it

is difficult to see how Kemp could execute an agreement with the requisite knowledge that the agreement was void. Thus, it is hard to understand (and prove) an intent to defraud. The Plaintiffs have failed to meet their burden of pleading intent to defraud with particularity, and the Court dismisses the MCFA claim.[2]

### III. Supplemental Jurisdiction

With the dismissal of the MCFA claim, all that remains are the Plaintiffs common-law tort claims, which do not include statutorily allowed attorneys' fees. As a result, the Court can only consider the alleged damages—the $62,401.65 paid to Kemp—to calculate the amount-in-controversy. This amount falls below the $75,000 threshold required for this Court to retain subject-matter-jurisdiction.

When all claims are part of the same "case or controversy," federal courts may retain subject-matter jurisdiction over claims alleging damages below $75,000 after dismissing the claim that originally met the amount-in-controversy requirement. *Arnold Crossroads, L.L.C. v. Gander Mountain Co.*, 751 F.3d 935, 946 (8th Cir. 2014) ("[W]here at least one plaintiff satisfies the amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes courts to exercise supplemental jurisdiction over claims that other plaintiffs

---

[2] The Minnesota Supreme Court has held that "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). Because the Plaintiffs fail to adequately plead Kemp intended to mislead them, this Court need not reach the public benefit issue .

8

assert in the same case that do not meet the amount-in-controversy requirement, provided that the additional claims are part of the same case or controversy.") (citing *Exxon Mobil Corp. v. Allapattah Serv. Inc.*, 545 U.S. 546, 549 (2005)). Yet courts need not do so. Under 28 U.S.C. § 1367(c), courts may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

When, as here, all claims over which the Court has subject-matter jurisdiction have been dismissed before trial, courts should consider "economy, convenience, fairness, and comity" when deciding whether to exercise jurisdiction over remaining claims. *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The claims in the Amended Complaint encompass the same case or controversy, as they all involve Kemp inducing the Plaintiffs to enter into the Assignments. But all other factors weigh in favor of remand. Only state-law tort claims that fall below the amount-in-controversy remain. And, as the Court has noted, this case presents the novel issue of whether agreements to search for and fund acquisition of probate assets are void as champertous under Minnesota law. Plus, it is early in the litigation and remand would not be unduly unfair or inconvenient for the parties. The Court therefore declines to

exercise supplemental jurisdiction over the remaining claims and this case is remanded to state court.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion to Dismiss [ECF No. 4] is GRANTED IN PART, as outlined herein; and

2. The case is REMANDED to state court.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: August 2, 2019	BY THE COURT:

	s/Nancy E. Brasel
	Nancy E. Brasel
	United States District Judge